NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

DROSOS & ASSOCIATES, PC, *et al.*,

              Plaintiffs,

v.

TD BANK NA,

              Defendant.

Civil Action No. 23-1275 (SDW) (LDW)

**OPINION**

June 23, 2023

**WIGENTON**, District Judge.

Before this Court is Plaintiffs Drosos & Associates PC ("D&A"), Drosos Lorenzo & Associates PC ("DLPC"), and Evangelos Drosos's ("Mr. Drosos," together with D&A and DLPC, "Plaintiffs") Motion for a Preliminary Injunction (D.E. 2 ("Motion")) pursuant to Federal Rule of Civil Procedure ("Rule") 65 and Local Civil Rule ("Local Rule") 65.1, against Defendant TD Bank NA ("TD Bank" or "Defendant"). This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Plaintiff's Motion is **DENIED**.

I.    **FACTUAL AND PROCEDURAL HISTORY**[1]

This action arises from Plaintiffs' failed attempts to recoup money held in accounts at TD Bank. (*See generally* D.E. 2-1.) Plaintiffs, an individual and two accounting firms,[2] maintained

---

[1] The facts herein largely derive from the Declaration of Evangelos Drosos in Support of Plaintiff's Application for a Preliminary Injunction. (D.E. 2-1 ("Declaration").)

[2] Mr. Drosos is a certified public accountant and a shareholder in D&A and DLPC. (*Id.* ¶¶ 4–6, 9.) Both D&A and DLPC are accounting firms; however, D&A also provides its clients with payroll services and escrow accounts related to its services. (*Id.* ¶¶ 5–8.)

at least 30 accounts[3] with TD Bank.  (*Id.* ¶ 10.)  Plaintiffs also subscribed to TD Bank's Treasury

Management Solutions platform ("eTreasury").[4]  (*Id.* ¶ 11.)  According to the Declaration, TD

Bank improperly linked all of Plaintiffs' accounts and, as a result, "commingle[d Plaintiffs']

funds" in "a single main D&A account."  (*Id.* ¶¶ 30–32.)

Throughout 2021, Plaintiffs' accounts at TD Bank were fraudulently accessed on multiple

occasions.  (*Id.* ¶¶ 16, 39, 68.)  In response to the fraudulent activity, TD Bank locked Plaintiffs

out of the eTreasury platform and froze[5] several of Plaintiffs' accounts on or about September 1,

2021.  (*Id.* ¶¶ 38–39.)  Because Plaintiffs' accounts and funds were improperly commingled, they

were unable to transact business from the affected *and* unaffected accounts—*i.e.*, those accounts

that were not fraudulently accessed—and Mr. Drosos was unable to access his personal funds.  (*Id.*

¶¶ 39–41.)  When Plaintiffs inquired into the circumstances surrounding the account freeze, TD

Bank's employees, Ryan Jagrup ("Jagrup") and Noey Navas ("Navas"), claimed that they were

investigating suspected fraud.  (*Id.* ¶¶ 44–45.)  Plaintiffs contend that, in the ensuing weeks, Jagrup

and Navas failed to provide any results from their investigation and became evasive, misleading,

and threatening when contacted by Plaintiffs.  (*Id.* ¶¶ 47–71.)  Still, Jagrup and Navas reassured

Plaintiffs that TD Bank "would recover any funds that were stolen or would recompense Plaintiffs

for the same."  (*Id.* ¶ 62.)

On or about September 14, 2021, Navas informed Plaintiffs that TD Bank would close the

frozen accounts and issue a check for the balance remaining in each account.  (*Id.* ¶ 65.)  The next

---

[3] Plaintiffs' submissions do not clearly indicate whether they maintained 30, 31, or 33 accounts at TD Bank.

[4] eTreasury purportedly helps its users "simplify billing, receive payments faster and accelerate revenue with . . . flexible automated Treasury Management solutions," and protects its users with an "anti-fraud plan," by providing customers with "a full suite of services designed to help protect [their] business . . . and give [them] greater control over [their] accounts to help [them] fight against fraud."  (*Id.* ¶¶ 14–15.)

[5] The account freeze restricted Plaintiffs' ability to access or view the accounts online.  (*Id.* ¶¶ 45–47.)

day, though, Jagrup and Navas informed Plaintiffs that money had already been drawn from the accounts via checks with forged endorsements.  (*Id.* ¶ 68.)   Plaintiffs demanded written confirmation of the fraudulent withdrawals and reimbursement for the same.  (*Id.* ¶ 69.)   Jagrup and Navas did not fulfill Plaintiffs' request.  (*Id.* ¶ 70.)

On or about September 27, 2021, TD Bank allegedly assigned another of its fraud investigators, Charles Hyacinthe, "to fix all errors of and resolve all issues by Navas and Jagrup." (*Id.* ¶ 75.)   Plaintiffs assert that Hyacinthe was no better than his predecessors.  For instance, Plaintiffs claim that "Hyacinthe did not provide any meaningful or detailed update [regarding the fraud investigation] and regularly . . . ignored emails and calls from [Plaintiffs] regarding the" frozen accounts.  (*Id.* ¶ 79.)   Notwithstanding, Hyacinthe sent Plaintiffs a letter on October 7, 2021. (*Id.* ¶ 80.)   Therein, Hyacinthe confirmed that TD Bank had closed Plaintiffs' accounts, however, he claimed that only two of Plaintiffs' 31 accounts had a positive balance.[6]  (*Id.* ¶ 87.)

Believing that TD Bank had mishandled the fraud investigation, Plaintiffs filed a complaint with the New Jersey Department of Banking and Insurance on or about October 22, 2021.  (*Id.* ¶ 113.)   Two weeks later, TD Bank sent a letter to Plaintiffs explaining its rationale for closing the accounts.  (*Id.* ¶ 117; D.E. 2-7.)   According to that letter, Plaintiffs failed to comply with TD Bank's previous request for information regarding the source of the funds in Plaintiffs' accounts. (D.E. 2-7.)   TD Bank further explained that it had closed Plaintiffs' accounts "[c]onsistent with the terms of the Business Deposit Account Agreement ("BDAA")," which provides, "The Bank reserves the right . . . to terminate any Account at any time, and for any reason or no reason, including without limitation any breach by you of this Agreement, without notice to you."  (*Id.*)

---

[6] TD Bank has informed Plaintiffs that only $200,000 remain in the accounts.  (*Id.* ¶ 107.)   Plaintiffs contend that the accounts should contain approximately $1.5 million.  (*Id.* ¶¶ 95, 107.)

On March 7, 2023, Plaintiffs filed a nine-count complaint against TD Bank.  (*See generally* D.E. 1.)  That same day, Plaintiffs moved for a preliminary injunction against TD Bank pursuant to Rule 65 and Local Rule 65.1.  (D.E. 2.)  Therein, Plaintiffs assert that TD Bank's misconduct has caused them harm in numerous forms:  they have been unable to access approximately $1.5 million; they have been prevented from transacting business; they have defaulted on "obligations to creditors, landlords, vendors, suppliers and other parties"; they have been sued by clients seeking to retrieve funds in the frozen escrow accounts; and their liabilities have continued to increase.  (*See generally* D.E. 2-1.)  At bottom, the Motion asks this Court to issue an injunction ordering TD Bank to immediately release the funds allegedly held in Plaintiffs' TD Bank accounts. (*See generally* D.E. 2-8.)

## II.   LEGAL STANDARD

Rule 65 governs a court's issuance of a preliminary injunction.  Fed. R. Civ. P. 65; L. Civ. R. 65.1.  "A preliminary injunction is an extraordinary remedy that is never to be awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)).  In considering whether to grant a preliminary injunction, courts must decide whether the party seeking the injunction has shown[7]:  "(1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such

---

[7] Because of their "limited purpose," preliminary injunctions are "customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).  "A party thus is not required to prove his case in full at a preliminary-injunction hearing." *Id.* (citing *Progress Dev. Corp. v. Mitchell*, 286 F.2d 222 (7th Cir. 1961)).  Still, the movant bears the burden of introducing evidence sufficient to support a preliminary injunction. *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000).  Such evidence may be in the form of "affidavits or other hearsay materials." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 718–19 (3d Cir. 2004).  "District courts must exercise their discretion in 'weighing all the attendant factors, including the need for expedition,' to assess whether, and to what extent, [such] materials are 'appropriate given the character and objectives of the injunctive proceeding.'" *Id.* at 719.  "The weight to which such materials are entitled may of course vary greatly depending on the facts and circumstances of a given case." *Id.*

relief." *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010) (quoting *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010)).  The Third Circuit has placed particular weight on the first two factors, instructing that it "cannot sustain a preliminary injunction ordered by the district court where either or both of these prerequisites are absent." *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 197 (3d Cir. 1990) (quoting *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982)); *see also Juul Labs, Inc. v. 4X PODS.*, 439 F. Supp. 3d 341, 350 (D.N.J. 2020) ("A court will consider all four factors, but the first two are essential . . . A court may not grant injunctive relief, 'regardless of what the equities seem to require,' unless plaintiffs carry their burden of establishing both a likelihood of success and irreparable harm." (quoting *Adams*, 204 F.3d at 484)).  If a court finds that the first two factors weigh in favor of the moving party, the "court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

## III.   DISCUSSION

Plaintiffs contend that a preliminary injunction is warranted to release their funds, which TD Bank has unlawfully held since September 2021.  Because Plaintiffs have shown neither irreparable harm nor a likelihood of success on the merits, their request for a preliminary injunction must be denied.  *See Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) ("The 'failure to establish any element . . . renders a preliminary injunction inappropriate.'").

### A.  Irreparable Harm

The movant "has the burden of proving a 'clear showing of immediate irreparable injury.'" *Hoxworth*, 903 F.2d at 205 (quoting *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 225 (3d Cir. 1987)).

To establish irreparable harm, a "plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial.  The preliminary injunction must be the only way of protecting plaintiff from the harm." *Holland v. Rosen*, 277 F. Supp. 3d 707, 725 (D.N.J. 2017) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989)).  On the one hand, "injury measured in solely monetary terms cannot constitute irreparable harm."  *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 562 F.3d 553, 557 (3d Cir. 2009) (citations omitted).  On the other hand, irreparable harm may exist "where a party may be forced to shut down without the requested injunctive relief." *W. S. Int'l, LLC v. M. Simon Zook, Co.*, 566 F. App'x 192, 197 (3d Cir. 2014) (citing *Instant Air Freight Co.*, 882 F.2d at 802).  Where the movant seeks a preliminary injunction that "will alter the status quo, [it] must meet a higher standard of showing irreparable harm in the absence of an injunction." *Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008) (citing *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995)); *see Tracey v. Recovco Mortg. Mgmt. LLC*, 451 F. Supp. 3d 337, 342 (D.N.J. 2020) ("The standard to obtain preliminary injunctive relief is heavy, particularly where injunctive relief alters the status quo.").

In addition, a movant's delay in requesting injunctive relief "undercuts the urgency that forms the cornerstone of injunctive relief; indeed, it indicates a lack of urgency." *Otsuks Pharm. Co. v. Torrent Pharms. Ltd.*, 99 F. Supp. 3d 461, 505 (D.N.J. 2015) (citing *Quad/Tech, Inc. v. Q.I. Press Controls B.V.*, 701 F. Supp. 2d 644 (E.D. Pa. 2010), *aff'd*, 413 F. App'x 278 (Fed. Cir. 2011)).  Thus, "inexcusable delay in seeking a preliminary injunction may defeat a movant's assertion of irreparable harm." *MNI Mgmt. v. Wine King, LLC*, 542 F. Supp. 2d 389, 403 (D.N.J. 2008); *see also J&J Snack Foods Corp. v. Nestle USA, Inc.*, 149 F. Supp. 2d 136, 158 (D.N.J. 2001) ("[P]laintiff's eight month delay in seeking a preliminary injunction against [the defendant]

also undercuts its present claim of irreparable harm."); *N.J. Ass'n of Health Care Facilities, Inc. v. Gibbs*, 838 F. Supp. 881, 928 (D.N.J. 1993) ("[D]elay in seeking preliminary relief cuts against finding irreparable injury.").

Here, Plaintiffs request entry of a preliminary injunction that would alter the status quo—they ask this Court to transfer back to them money that has been frozen in TD Bank accounts since September 1, 2021. Accordingly, Plaintiffs must "meet a higher standard of showing irreparable harm in the absence of an injunction." *Bennington Foods*, 528 F.3d at 179 (citing *Tom Doherty Assocs.*, 60 F.3d at 33–34)). They have not done so. First, Plaintiffs' Declaration and briefs contain only conclusory assertions of harm. (*See, e.g.*, D.E. 2-1 ¶¶ 100–02, 111–12.) "[A] plaintiff's 'blanket statement' that failure to issue a preliminary injunction will cause irreparable harm . . . is insufficient." *MHA, LLC v. Siemens Healthcare Diagnostics, Inc.*, No. 15-1573, 2015 WL 9304543, at *4 (D.N.J. Dec. 21, 2015) (quoting *Stryker v. Hi-Temp Specialty Metals, Inc.*, No. 11-6384, 2012 WL 715179, at *5 (D.N.J. Mar. 2, 2012)); *see also INDECS Corp. v. Claim Doc, LLC*, No. 16-4421, 2017 WL 1086178, at *3 (D.N.J. Mar. 21, 2017) (explaining that "a conclusory statement in [a plaintiff's] affidavit" is insufficient to establish irreparable harm). Indeed, despite Plaintiffs' claims of lost business, "office space," "personal assets," "sales," and "goodwill," (D.E. 2-2 at 6), they have not specifically "identified any contracts" that they have "been unable to perform," "any third parties with whom [they] ha[ve] suffered a loss of reputation, or any attempts—futile or otherwise—[they] ha[ve] made to fulfill contracts . . . by obtaining [funds] from other sources." *Bennington Foods*, 528 F.3d at 179. Second, Plaintiffs filed the instant Motion on March 7, 2023—16 months after TD Bank allegedly seized Plaintiffs' funds. That lengthy delay, without any adequate explanation, further undermines Plaintiffs' claim of imminent, irreparable harm. *See, e.g.*, *Vita-Pure, Inc. v. Bhatia*, No. 14-7831, 2015 WL 1496396, at *4

(D.N.J. Apr. 1, 2015) (collecting cases).  Consequently, Plaintiffs have not established that they will suffer irreparable harm in the absence of a preliminary injunction.

### B. Likelihood of Success on the Merits

Even if Plaintiffs had adequately demonstrated irreparable harm, they still have failed to establish a likelihood of success on the merits.

A party moving for a preliminary injunction bears the burden to prove its likelihood of success on the merits of its case.  *Ferring Pharms.*, 765 F.3d at 210 (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990)).   The moving party must "'demonstrate that it *can* win on the merits,' which involves a showing that its chances of establishing each of the elements of the claim are 'significantly better than negligible.'"  *Mallet & Co. v. Lacayo*, 16 F.4th 364, 380 (3d Cir. 2021) (quoting *Reilly*, 858 F.3d at 179 n.3).  Likelihood of success, however, does not require "a more-likely-than-not showing of success."  *Reilly*, 858 F.3d at 179 n.3.  Rather, "a sufficient degree of success for a strong showing exists if there is a 'reasonable chance, or probability, of winning.'"  *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (quoting *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (en banc)).  "[W]hether a party has met this threshold will necessarily vary with the circumstances of each case."  *Fres-co Sys. USA, Inc. v. Hawkins*, 690 F. App'x 72, 77 (3d Cir. 2017).  Generally, "preliminary injunction[s] cannot be issued when there are disputed issues of fact."  *Gruntal & Co. v. Steinberg*, 843 F. Supp. 1, 16 (D.N.J. 1994); *see also Peoplestrategy, Inc. v. Lively Emp. Servs., Inc.*, No. 20-2640, 2020 WL 7869214, at *3 (D.N.J. Aug. 28, 2020) ("A preliminary injunction also should not be issued where material issues of fact are in dispute." (citing *Vita-Pure*, 2015 WL 1496396, at *3)).

Here, Plaintiffs have failed to demonstrate a likelihood of success on the merits for several reasons. First, Plaintiffs have not provided any substantive analysis of the likelihood of success on any of their nine claims. Instead, Plaintiffs seemingly shift the burden to TD Bank to disprove Plaintiffs' concealed legal theories and conclusory assertions. (*See* D.E. 2-2 at 5–6; D.E. 14 at 4–5, 9–11.) On a motion for a preliminary injunction, however, it is axiomatic that the moving party bears the burden to establish a likelihood of success on the merits. *Ferring Pharms.*, 765 F.3d at 210 ("The movant bears the burden of showing that these four factors weigh in favor of granting an injunction." (citing *Opticians Ass'n of Am.*, 920 F.2d at 192)). The onus is not on TD Bank to guess the causes of action on which Plaintiffs believe they are likely to succeed.

Second, each of Plaintiffs' claims rests on material factual disputes, which cannot be resolved by Plaintiffs' conclusory, self-serving Declaration. To be sure, the likelihood of success of Plaintiffs' claims depends on, *inter alia*, the terms of the contract between Plaintiffs and TD Bank; the reason for TD Bank's freezing Plaintiffs' accounts and withholding the remaining funds therein; and the extent to which Plaintiffs' own conduct caused the account freeze. And, notably, several of Plaintiffs' claims are directly undercut by the contractual provision identified in TD Bank's November 5, 2021 letter to Plaintiffs, which indicates that TD Bank has "the right . . . to terminate any Account at any time, and for any reason or no reason, including without limitation any breach by [Plaintiffs] of this Agreement, without notice to [Plaintiff]." (D.E. 2-7.) At bottom, Plaintiffs have failed to carry their burden of establishing a likelihood of success on the merits.[8]

IV.   **CONCLUSION**

---

[8] This Court need not address the remaining factors in light of Plaintiffs' failure to establish irreparable harm and a likelihood of success. *See Ferring Pharms.*, 765 F.3d at 210 ("The 'failure to establish any element . . . renders a preliminary injunction inappropriate.'").

For the reasons set forth above, Plaintiffs' request for a preliminary injunction is **DENIED**.

An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Parties
        Leda D. Wettre, U.S.M.J.

10