**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DROSOS & ASSOCIATES, PC, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> TD BANK NA, <br><br> Defendant. | Civil Action No. 23-1275 (SDW) (LDW) <br><br> **OPINION** <br><br> February 29, 2024 |

**WIGENTON**, District Judge.

Before this Court is Defendant TD Bank NA's ("TD Bank") Motion to Dismiss (D.E. 29 ("Motion")) Plaintiffs Drosos & Associates PC ("D&A"), Drosos Lorenzo & Associates PC ("DLPC"), and Evangelos Drosos's ("Mr. Drosos," together with D&A and DLPC, "Plaintiffs") First Amended Complaint (D.E. 26 ("FAC")) for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  Jurisdiction is proper pursuant to 28 U.S.C. §§ 1332 and 1367(a).  Venue is proper pursuant to 28 U.S.C. § 1391.  For the reasons stated herein, TD Bank's motion to dismiss is **GRANTED**, and the FAC is **DISMISSED WITHOUT PREJUDICE**.

### I.   FACTUAL BACKGROUND[1]

---

[1] In considering a motion to dismiss pursuant to Rule 12(b)(6), a district court may only examine the complaint and documents "integral to or explicitly relied upon in the complaint."  *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020)).  Moreover, it is axiomatic that a plaintiff may not amend his or her complaint via briefs in opposition to a motion to dismiss.  *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984), *cert. denied*, 470 U.S. 1054 (1984)).  Accordingly, the facts cited herein largely derive from the FAC and documents integral thereto or explicitly relied upon therein.

This action arises from Plaintiffs' failed attempts to recover funds held in accounts at TD Bank.  (*See generally* D.E. 26.)  Plaintiffs[2] are an individual and two accounting firms that offer their clients payroll management and escrow services.  (*Id.*)  Plaintiffs contracted with TD Bank to maintain over 30 accounts, one of which contained more than $1,000,000 held in escrow for Plaintiffs' clients.  (*Id.* ¶¶ 2, 13, 15.)  D&A also contracted with TD Bank for its eTreasury platform; for a monthly fee of $7,000, TD Bank provided a service that purported to simplify billing, hasten receipt of payments, accelerate revenue, and protect against fraud.[3]  (*Id.* ¶ 19.)  The FAC alleges, however, that TD Bank's eTreasury platform improperly linked all of Plaintiffs' accounts, which resulted in a "sweep" of all Plaintiffs' money—including money held in escrow— "into a single main D&A Account."  (*Id.* ¶¶ 35–37.)  This alleged commingling was detrimental to the sanctity of the funds belonging to Plaintiffs and, ultimately, their clients.  (*Id.* ¶ 37.)  Despite Plaintiffs' objections, TD Bank did not untangle the accounts, which allegedly exacerbated issues that arose when Plaintiffs' accounts were exposed to fraud.

Throughout 2021, TD Bank identified instances of fraudulent activity in Plaintiffs' accounts. (*Id.* ¶¶ 21–27, 40–41.)  In response, agents from TD Bank assured Plaintiffs that they were investigating the fraudulent activity, but they did not disclose details of their efforts.  (*Id.* ¶¶ 42, 53, 65.)  Eventually, on September 1, 2021, TD Bank froze and locked Plaintiffs' accounts, rendering them unviewable and only capable of receiving funds.  (*Id.* ¶ 43, 45, 47.)  Over the ensuing days, agents from TD Bank—namely, Ryan Jagrup and Noey Navas—exchanged correspondence with Plaintiffs regarding the accounts.  (*Id.* ¶¶ 48–76.)  According to Plaintiffs,

---

[2] Mr. Drosos is an individual accountant, D&A is an accounting firm, DLPC is also an accounting firm, and all Plaintiffs reside in Bergen County, NJ.  (*Id.* ¶¶ 3–5, 9–11.)

[3] Plaintiffs allege that they enrolled in the program specifically because of its payroll processing assistance and fraud avoidance.  (*Id.* ¶ 25.)

however, Jagrup and Navas conducted shoddy investigations into the fraud on the accounts, failed to provide updates, avoided phone calls, denied that TD Bank had an obligation to keep Plaintiffs' funds segregated, and claimed that TD Bank could close the accounts at any time.  (*Id.*)  Plaintiffs continued attempting to engage with Jagrup and Navas until they were replaced by Charles Hyacinthe on or about September 27, 2021.  (*Id.* ¶¶ 77–78.)  This personnel change, Plaintiffs insist, was motivated by Jagrup's and Navas's misconduct.  (*Id.* ¶¶ 78–79.)

Upon taking over for Jagrup and Navas, Hyacinthe informed Plaintiffs that he would be leading TD Bank's fraud investigation.  (*Id.* ¶ 77.)  Hyacinthe further assured Plaintiffs that all of TD Bank's past actions were done in an effort to protect Plaintiffs and their accounts.  (*Id.* ¶ 82.)  Shortly after replacing Jagrup and Navas, Hyacinthe sent Plaintiffs an email detailing that TD Bank had closed 29 of their accounts and explaining that only two of the accounts had a positive balance.  (*Id.* ¶¶ 85, 87–88, 91.)  In his email, Hyacinthe failed to disclose the account balances but requested that Plaintiffs provide the sources of the funds in the accounts.[4]  (*Id.* ¶ 91.)  Plaintiffs generally allege that they cooperated with TD Bank and its agents throughout all stages of the investigations.  (*Id.* ¶ 81.)  Plaintiffs assert, however, that Hyacinthe—like Jagrup and Navas—failed to keep them informed of the investigations and "routinely ignored emails and calls."  (*Id.* ¶ 84.)

Plaintiffs allege that, to date, they have not received any further documentation, explanation, or access to their accounts or funds; their accounts remain frozen; and their accounts—which contained approximately $1.5 million prior to September 1, 2021—now hold only approximately $200,000.  (*Id.* ¶¶ 93–94, 99–101, 112, 132–133.)  Plaintiffs contend that, despite the accounts being frozen since September 1, 2021, fraudulent transfers continued to occur

---

[4] Plaintiffs emphasize Hyacinthe requested a sourcing of the funds despite Plaintiffs' inability to view or access the accounts.  (*Id.* ¶ 91.)

thereafter, including throughout September and October 2021.[5]   At bottom, Plaintiffs allege that TD Bank failed to adequately investigate the fraud on the accounts, impermissibly froze and locked the accounts, and generally mishandled the funds located in the accounts.  (D.E. 26 ¶¶ 28, 31–37.) This misconduct, Plaintiffs insist, prevented them from transacting business and fulfilling financial obligations, subjected them to multiple lawsuits, and deprived them of funding their defense in various other suits.  (*Id*. ¶¶ 33, 107, 116–117.)

## II.   **PROCEDURAL HISTORY**

On March 7, 2023, Plaintiffs filed a nine-count complaint, and moved for a preliminary injunction, against TD Bank.  (D.E. 1 ("Complaint"); D.E. 2.)  While the motion for a preliminary injunction was pending, TD Bank filed a motion to dismiss the Complaint pursuant to Rule 12(b)(6).  (D.E. 15.)  Plaintiffs opposed the motion to dismiss and cross moved to amend the Complaint.  (D.E. 18–19.)  On June 23, 2023, this Court denied Plaintiffs' motion for injunctive relief, and that same day, Magistrate Judge Leda D. Wettre granted Plaintiffs' request to amend the Complaint.  (D.E. 23–25.)  Five days later, Plaintiffs filed the FAC, alleging nine claims against TD Bank, including claims for negligence, breach of fiduciary duty, conversion, violation of the New Jersey Consumer Fraud Act ("NJCFA"), and various violations of New Jersey's Uniform Commercial Code ("UCC").  (D.E. 26.)

## III.   **LEGAL STANDARD**

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(a)(2).  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must

---

[5] On October 22, 2021, Plaintiffs filed with the New Jersey Department of Banking and Insurance a complaint, which was forwarded to the Consumer Financial Protection Bureau and the Office of the Comptroller of the Currency.  (*Id.* ¶¶ 118–120.)  The FAC does not provide any further information regarding the outcome of the complaint to the New Jersey Department of Banking and Insurance.

be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief"). In addition, a plaintiff alleging fraud by a defendant must meet the "stringent pleading restrictions of Rule 9(b)" by pleading with particularity "the circumstances constituting fraud or mistake." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting Fed. R. Civ. P. 9(b)). To satisfy Rule 9(b)'s heightened pleading standard, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* (citing *Lum v. Bank of Am.*, 361 F.3d 2817, 224 (3d Cir. 2004)).

In considering a motion to dismiss pursuant to Rule 12(b)(6), a district court must conduct a three-step analysis. First, it must "tak[e] note of the elements a plaintiff must plead to state a claim." *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (alteration in original) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). Second, the court "disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Id.* (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). Third, the court assumes the veracity of all well-pleaded factual allegations, "constru[es] them in the light most favorable to the plaintiff, and draw[s] all reasonable inferences in the plaintiff's favor." *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 328 (3d Cir. 2022). "If, after completing this process, the complaint alleges 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements of a claim, then it plausibly pleads a claim." *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 556).

Determining whether the allegations in a complaint are "plausible" is "a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

## IV.   **DISCUSSION**

### A. **Common Law Claims (Counts One, Three, and Eight)**

Plaintiffs assert three common law claims: negligence (Count One), breach of fiduciary duty (Count Three), and conversion (Count Eight). (*See generally* D.E. 26.) These claims will be dismissed because they are displaced by the UCC, and in any event, they are inadequately pleaded.

#### 1.   The Common Law Claims are Largely Displaced by the UCC

Much of Plaintiffs' claims arise out of TD Bank's alleged mishandling and improper funds transfers into and out of Plaintiffs' accounts. As such, they are displaced by Articles 4 and 4A of the UCC.

New Jersey's Legislature enacted the UCC, N.J. Stat. Ann. 12A:1-101, *et seq.*, in an effort "to simplify, clarify, and modernize the law governing commercial transactions; to permit the continued expansion of commercial practices through custom, usage and agreement of the parties; and to make uniform the law among the various jurisdictions." N.J. Stat. Ann. 12A:1–103(a). This legislative scheme "displaces the common[]law where reliance on the common law would thwart the purposes of the UCC." *Psak, Graziano, Piasecki & Whitelaw v. Fleet Nat'l Bank*, 915 A.2d 42, 45 (N.J. Super. Ct. App. Div. 2007) (citing *Sebastian v. D & S Express, Inc.*, 61 F. Supp. 2d 386, 391 (D.N.J. 1999)). "Only in very rare instances should a court upset the [UCC's] legislative scheme of loss allocation and permit a common law cause of action." *City Check Cashing, Inc. v. Mfrs. Hanover Tr.*, 764 A.2d 411, 415 (quoting *Bank Polska Kasa Opieki v. Pamrapo Sav. Bank*,

909 F. Supp. 948, 956 (D.N.J. 1995)).  "Notwithstanding its expansive language, 'the UCC does not purport to preempt the entire body of law affecting the rights and obligations of parties to a commercial transaction." *ADS Assocs. Grp., Inc. v. Oritani Sav. Bank*, 99 A.3d 345, 357 (N.J. 2014) (quoting *N.J. Bank, N.A. v. Bradford Sec. Operations, Inc.*, 690 F.2d 339, 345 (3d Cir. 1982)).  Rather, the UCC displaces only those common law claims that would frustrate its purposes or "create rights, duties and liabilities inconsistent with those stated" therein.  *Id.* (quoting N.J. Stat. Ann. 12A:4A-102 cmt. 1).

In determining whether the UCC displaces a common law claim, a district court begins by liberally construing and applying the UCC "to promote its underlying purposes and policies." *Psak, Graziano*, 915 A.2d at 46 (quoting N.J. Stat. Ann. 12A:1-102(1)).  The UCC "provides a comprehensive framework for allocating and apportioning the risks of handling checks," *City Check Cashing, Inc. v. Mfrs. Hanover Tr. Co.*, 764 A.2d 411, 415 (N.J. 2001), and it "generally 'defines the rights between the parties with respect to bank deposits and collections," *Psak, Graziano*, 915 A.2d at 42 (quoting N.J. Stat. Ann. 12A:4-101 cmt. 3).  Likewise, the UCC is "intended to be the exclusive means of determining the rights, duties and liabilities" with respect to electronic funds transfers pursuant to Article 4A.[6]  *ADS Assocs. Grp.*, 99 A.3d at 354, 359.

Here, Counts Three and Eight seek to impose liability on TD Bank for its alleged mishandling of checks and funds transfers—areas covered by the UCC—and allowing these common law claims to proceed would undermine the UCC.  To be sure, Count Three seeks to hold liable TD Bank for a breach of its fiduciary duty by "unilaterally and illegally transferr[ing] Plaintiffs' funds without Plaintiffs' prior knowledge, authorization[,] or consent."  (D.E. 26 ¶ 171.)

---

[6] "Funds transfer" means "the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order." *ADS Assocs. Grp.*, 99 A.3d at 354.  "A bank customer's transfer of money between two of its own accounts may constitute a 'funds transfer' governed by Article 4A of the UCC." *Id.* (quoting N.J. Stat. Ann. 12A:4A-104 cmt. 1).

Similarly, Count Eight alleges a cause of action for conversion based on "TD Bank's wrongfully interfer[ing] with Plaintiffs' rights by taking, misappropriating, squandering[,] or otherwise improperly dispensing with over $1 million dollars[] worth of Plaintiffs['] funds." (*Id.* ¶¶ 245.) As already explained, however, the UCC "defines the rights between the parties with respect to bank deposits and collections," *Psak, Graziano*, 915 A.2d at 42 (quoting N.J. Stat. Ann. 12A:4-101 cmt. 3), and electronic funds transfers,[7] *ADS Assocs. Grp.*, 99 A.3d at 354, 359. For instance, Article 4A "defines the customer's rights, and limits the liability of the bank, when it accepts a payment order that turns out to be unauthorized." *Id.* at 354. It "addresses in detail the circumstances under which a bank may conclude that a payment order for a transfer of funds is properly authorized[, and] provides that '[a] payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency." *Id.* (quoting N.J. Stat. Ann. 12A:4A-202(1)). In other words, Plaintiffs' claims for breach of fiduciary duty and conversion touch upon the province of the UCC's loss allocation schemes.

Mere overlap, though, is not enough; the common law claims will only be displaced by the UCC if they would "thwart the purposes of the UCC." *ADS Assocs. Grp.*, 99 A.3d at 357 (citations omitted). In this case, they would. The UCC contains a three-year statute of limitations as well as one-year statutes of repose under Articles 4 and 4A[8] whereas Plaintiffs' common law claims enjoy a six-year limitations period. The Third Circuit has explained, however, that "[v]igorous application of the statute of limitations is a reasonable means of achieving certainty in commercial

---

[7] "Funds transfer" means "the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order." *ADS Assocs. Grp.*, 99 A.3d at 354. "A bank customer's transfer of money between two of its own accounts may constitute a 'funds transfer' governed by Article 4A of the UCC." *Id.* (quoting N.J. Stat. Ann. 12A:4A-104 cmt. 1).

[8] As set forth herein, the statutes of repose bar several of Plaintiffs' UCC claims.

transactions." *Menichini v. Grant*, 995 F.2d 1224, 1231 (3d Cir. 1993). Thus, permitting untimely UCC claims to proceed as common law claims subject to a six-year statute of limitations would thwart the purposes of the UCC. Indeed, it would render superfluous both the UCC's three-year statute of limitations and one-year statutes of repose by allowing parties to couch otherwise-time-barred UCC claims in terms of common law claims.

In sum, Plaintiffs' claims for breach of fiduciary duty and conversion are claims that impermissibly "create rights, duties and liabilities inconsistent with those stated in" the UCC. N.J. Stat. Ann. 12A:4A-102. Consequently, Counts Three and Eight will be dismissed.[9]

2. Counts One and Three Suffer from Other Flaws

Even if the UCC did not displace all of Plaintiffs' common law claims, other reasons justify dismissal.

i. Count One: Negligence

Plaintiffs have failed to adequately allege that TD Bank owed a duty to them, and even if they did plead the existence of such a duty arising out of their contractual relationship, the negligence claim would be barred by the economic loss doctrine.

Under New Jersey law, a plaintiff asserting a negligence claim must allege "four elements: (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." *Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 59 A.3d 561, 571 (N.J. 2013). "Whether a person owes a duty of reasonable care toward another turns on whether the imposition of such duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." *Holm v. Purdy*, 285 A.3d 857, 867 (N.J. 2022) (quoting *Hopkins v. Fox & Lazo*

---

[9] To the extent Plaintiffs' negligence claim (Count One) is based on TD Bank's alleged improper funds transfers or check payments, it, too, is dismissed. It appears, however, that Count One seeks to hold liable TD Bank for negligently suspending and locking out Plaintiffs from their accounts and for TD Bank's duties under the eTreasury Services Agreement. Accordingly, it will be dismissed for reasons set forth below.

*Realtors*, 625 A.2d 1110, 1116 (N.J. 1993)).  In determining whether a defendant owes a duty of reasonable care to a plaintiff, "[t]he 'court must first consider the foreseeability of harm to a potential plaintiff and then analyze whether accepted fairness and policy considerations support the imposition of a duty."[10]  *Id.* (quoting *Coleman v. Martinez*, 254 A.3d 632, 642 (N.J. 2021)). Courts must "weigh 'the (1) relationship of the parties, (2) nature of the risk, (3) opportunity and ability to exercise care, and (4) public interest.'"  *Id.* (quoting *Martinez*, 254 A.3d at 645).  A negligence claim, however, generally "does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law."  *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (N.J. 2002) (citations omitted).  "Absent a contractual duty, a bank has no obligation to manage, supervise, control or monitor the financial activity of its debtor-depositor and is not liable to its depositor in negligence for failing to uncover a major theft."  *Globe Motor Car Co. v. First Fid. Bank, N.A.*, 641 A.2d 1136, 1139 (N.J. Super. Ct. Law Div. 1993) (Fuentes, J.), *aff'd*, 677 A.2d 794 (N.J. Super. Ct. App. Div. 1996).

Here, Count One fails because the FAC does not allege that TD Bank owed a duty to Plaintiffs independent from its contractual obligations to them.[11]  Further, any negligence claim based on duties that arise out of the parties' contracts would be barred by the economic loss doctrine.[12]  Therefore, Plaintiffs' negligence claim will be dismissed.

---

[10] "Determining the scope of tort liability has traditionally been the responsibility of the courts."  *Hopkins*, 625 A.2d at 1116 (citing *Kelly v. Gwinnell*, 476 A.2d 1219, 1226 (N.J. 1984)).

[11] To the extent Plaintiffs contend that TD Bank owed an independent duty imposed by the UCC, the claim is preempted.

[12] Under New Jersey law, the economic loss doctrine prohibits a party from "maintain[ing] a negligence action, in addition to a contract action, unless the plaintiff can establish an independent duty of care."  *Saltiel*, 788 A.2d at 278. "Irrespective of the terminology used in the complaint," a plaintiff cannot maintain a tort action that "simply [seeks] to enhance the benefit of the bargain she contracted for with [the] defendant."  *Id.* at 280 (citations omitted).  That, it seems, is precisely what Plaintiffs attempt to do here; instead of bringing a claim for breach of contract, Plaintiffs assert a negligence claim based on duties arising out of their contractual relationship with TD Bank.  Such a claim cannot lie.

### ii.  Count Three:  Breach of Fiduciary Duty

To state a claim for breach of fiduciary duty, a plaintiff must allege:  "1) the existence of a fiduciary duty or relationship between the parties; 2) breach of that duty; and 3) resulting damages." *Read v. Profeta*, 397 F. Supp. 597, 633 (D.N.J. 2019) (citation omitted).  A fiduciary relationship may arise when "one party places trust and confidence in another who is in a dominant or superior position." *McKelvey v. Pierce*, 800 A.2d 840, 859 (N.J. 2002).

"The relation between a depositor and a bank is one of creditor and debtor," *Forbes v. First Camden Nat'l Bank & Tr. Co.*, 95 A.2d 416, 418 (N.J. Super. Ct. App. Div. 1953), and it is well established that such relationships "do[] not ordinarily give rise to a fiduciary duty," *St. Matthew's Baptist Church v. Wachovia Bank Nat'l Ass'n*, No. 04-4540, 2005 WL 1199045, at *9 (D.N.J. May 18, 2005); *see also Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 53 (3d Cir. 1988) ("Creditor-debtor relationships . . . rarely are found to give rise to a fiduciary duty."); *Klemm v. Labor Co-Op. Nat'l Bank of Paterson*, 187 A. 640, 641–42 (N.J. 1936) ("The relation of debtor and creditor, arising from the general deposit, was not converted into one fiduciary in nature."); *United Jersey Bank v. Kensey*, 704 A.2d 38, 44 (N.J. Super. Ct. App. Div. 1997) (collecting cases and explaining that "[t]he virtually unanimous rule is that creditor-debtor relationships rarely give rise to a fiduciary duty").

Faced with that precedent, Plaintiffs offer nothing but conclusory allegations of a fiduciary relationship with TD Bank.  It is axiomatic that this Court must disregard such base assertions. *Thanoo*, 999 F.3d at 904 (quoting *James*, 700 F.3d at 681).  Consequently, Plaintiffs' claim for breach of fiduciary duty will be dismissed.

### B.  NJCFA Claim (Count Nine)

Plaintiffs' claim under the NJCFA fails for two reasons:  it is preempted by the UCC, and even if it is not, it was not pleaded with the specificity required by Rule 9(b).

As an initial matter, to the extent that Plaintiffs' NJCFA claim is merely a veiled attempt to hold TD Bank "to a standard of reasonableness and ordinary care different [from] the UCC standard," it will be dismissed. *Estate of Paley v. Bank of Am.*, 18 A.3d 1033, 1044 (N.J. Super. Ct. App. Div. 2011) (affirming dismissal of NJCFA claim that was "couched in terms of reasonableness of the bank's conduct and whether the bank exercised ordinary care"). Such a claim "creates an irreconcilable conflict with the code specifically designed to bring uniformity to commercial transactions," and as such, it would be displaced thereby. *Id.*

Even if the NJCFA claim is not preempted by the UCC, Plaintiffs still fail to plead such a claim in accordance with Rule 9(b)'s heightened pleading standard. To state a claim under the NJCFA, a plaintiff must plead "1) unlawful conduct[13] by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *D'Agostino v. Maldonado*, 78 A.3d 527, 536–37 (N.J. 2013) (quoting *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009)); *see also Frederico*, 507 F.3d at 202 (citing *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462–65 (N.J. 1994)). "Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations." *Frederico*, 507 F.3d at 202 (quoting *Cox*, 647 A.2d at 462). Crucially, a plaintiff alleging fraud by a defendant must meet the "stringent pleading restrictions of Rule 9(b)," *id.* at 200, which requires the "plaintiff [to] allege the 'who, what, when, where, and how' of the claim," *Crozier v. Johnson & Johnson Consumer Cos.*, 901 F. Supp. 2d 494, 506 (D.N.J. 2012) (quoting *Lum*, 361 F.3d at 224).

---

[13] The NJCFA defines "unlawful practice" as:

> The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deceptive, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise.

N.J. Stat. Ann. § 56:8-2.

Here, Plaintiffs fail to allege with any specificity the "who, what, when, where, and how" of the specific misrepresentations for which they seek to hold TD Bank liable.[14]  Therefore, Count Nine is dismissed.

**C.  UCC Claims (Counts Two, Four, Five, Six, and Seven)**

Plaintiffs' UCC claims fare no better; they are time barred and otherwise inadequately pleaded.

1.  <u>Counts Two, Four, Five, and Seven are Barred by the Statutes of Repose and Contractual Terms</u>

Under Article 4 of the UCC, "a customer who does not within one year after the statement or items are made available to the customer (subsection a. of this section) discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration," irrespective of the bank's negligence. N.J. Stat. Ann. 12A:4-406(f).  Put differently, section 4-406(f) bars claims for which "the *sine qua non* for a drawee bank's liability to its customer is payment of an item over a forged or unauthorized signature of a drawer or of an item not otherwise properly payable."  *Brighton, Inc. v. Colonial First Nat'l Bank*, 422 A.2d 433, 438 (N.J. Super. Ct. App. Div. 1980).  "This one-year period limitation . . . is not merely a statute of limitations, but a rule of substantive law barring absolutely a customer's untimely asserted right to make such a claim against the bank."  *Id.* at 437. Article 4A contains a similar provision, which provides:

If a receiving bank has received payment from its customer with

---

[14] To the extent Plaintiffs base their claims on TD Bank's alleged omissions, that claim fails too because the FAC contains only conclusory assertions of such omissions.  Although courts will relax the stringent pleading requirements of Rule 9(b) where a plaintiff alleges that there are concealed facts within the exclusive control of a defendant, *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 285 (3d Cir. 1992), boilerplate assertions will not suffice, *In re Exxon Mobil Corp. Sec. Litig.*, 387 F. Supp. 2d 407, 427 (D.N.J. 2005) (quoting *Shapiro*, 964 F.3d at 285).  Instead, "plaintiffs must accompany such an allegation with a statement of facts upon which the assertion is based," *id.* (quoting *Shapiro*, 964 F.2d at 285), and set forth "at least the nature and scope of plaintiff['s] effort to obtain, before filing the complaint, the information needed to plead with particularity," *Shapiro*, 964 F.2d at 285.  The FAC alleges neither, and therefore, Plaintiffs' claims that TD Bank withheld certain material information will therefore be dismissed.

> respect to a payment order issued in the name of the customer as
> sender and accepted by the bank, and the customer received
> notification reasonably identifying the order, the customer is
> precluded from asserting that the bank is not entitled to retain the
> payment unless the customer notifies the bank of the customer's
> objection to the payment within one year after the notification was
> received by the customer.

N.J. Stat. Ann. 12A:4A-505.

Here, because at least four of Plaintiffs' UCC claims arise out of TD Bank's alleged wrongful funds transfers or payments of items that were "not properly payable"—both of which would be apparent from Plaintiffs' account statements—they are barred by the statutes of repose. To be sure, Count Two asserts that "TD Bank accepted payment orders that were clearly fraudulent on [their] face and should have been rejected" (D.E. 1 ¶ 164); Count Four alleges that TD Bank processed and negotiated forged checks, which, according to Plaintiffs, TD Bank "should have discovered . . . before the checks were paid" (D.E. 31-1 at 26–27; *see* D.E. 1 ¶¶ 196–200, 205–06;); Count Five states that "TD Bank has unilaterally and illegally transferred Plaintiffs' funds without Plaintiffs' prior knowledge, authorization[,] or consent," and, in turn, "improperly held Plaintiffs liable for th[ose transfers]" (D.E. 1 ¶¶ 214–219); and Count Seven avers that TD Bank "made improper payments with respect to checks for a person not entitled to enforce the checks or receive payment," and that "TD Bank has unilaterally and illegally transferred Plaintiffs' funds without Plaintiffs' prior knowledge, authorization[,] or consent." (*id.* ¶¶ 231, 233). Notably, Plaintiffs challenge the improper transfers or payments that occurred in September and October 2021; however, the FAC makes clear that Plaintiffs did not notify TD Bank of these transactions within one year of the financial statements being made available to them.[15] Consequently, Counts Two, Four, Five, and Seven will be dismissed as barred by the statutes of repose.

---

[15] Pursuant to the Deposit Agreement, statements are considered made available to Plaintiffs on the date they are sent.

Even if the statutes of repose do not bar those claims, the Business Deposit Agreement between the parties does.[16]  It expressly states that Plaintiffs "agree not to assert a claim against us [(TD Bank)] concerning any error, forgery or other problem relating to a matter shown on an Account statement unless you notified us of the error, forgery or other problem within thirty (30) Calendar Days after we mailed you the statement."  (D.E. 29-4 at 8.)  Because the FAC demonstrates that Plaintiffs did not notify TD Bank of any error, forgery, or other problem apparent from the September and October 2021 account statements within 30 days after the statements were mailed, Counts Two, Four, Five, and Seven will be dismissed.

2. <u>Count Six Fails Because the FAC Does Not Allege that TD Bank Is a Receiving Bank</u>

The facts as alleged in the FAC make clear that section 12A:4A-305(2) does not apply to TD Bank.  At bottom, Count Six alleges that TD Bank violated section 12A:4A-305(2) by failing to execute funds transfers from Plaintiffs' clients into Plaintiffs' accounts.  Section 12A:4A-305(2) provides:

> If execution of a payment order by a *receiving bank* in breach of section 12A:4A-302 results in (i) noncompletion of the funds transfer . . . the bank is liable to the originator for its expenses in the funds transfer and for incidental expenses and interest losses, to the extent not covered by subsection (1), resulting from the improper execution.

N.J. Stat. Ann. 12A:4A-305(2) (emphasis added).  A receiving bank is defined as "the bank to which the sender's instruction is addressed," a "beneficiary" is "the person to be paid by the beneficiary's bank," and a "beneficiary's bank" is "the bank identified in a payment order in which an account of the beneficiary is to be credited pursuant to the order or which otherwise is to make payment to the beneficiary if the order does not provide for payment to an account."  N.J. Stat.

---

[16] Both Articles 4 and 4A of the UCC permit parties to vary their rights and obligations by agreement.  *See* N.J. Stat. Ann. 12A:4-103; N.J. Stat. Ann. 12A:4A-501.

Ann. §§ 12A:4A-103(1)(b), (c), and (d).

Here, TD Bank is not a "receiving bank" within the meaning of section 12A:4A-103(1), and thus, TD Bank cannot be held liable for a breach of section 12A:4A-305(2).  Therefore, Count Six will be dismissed.

## V.    <u>CONCLUSION</u>[17]

For the reasons set forth above, TD Bank's Motion is **GRANTED**, and the FAC is **DISMISSED WITHOUT PREJUDICE**.[18]  An appropriate order follows.


    */s/ Susan D. Wigenton*
    **SUSAN D. WIGENTON, U.S.D.J.**

Orig:  Clerk
cc:    Parties
       Leda D. Wettre, U.S.M.J.

---

[17] This Court notes that, in their brief in opposition to TD Bank's Motion, Plaintiffs failed to rebut several of the arguments.  Failure to do so in any future briefing may result in abandonment of claims.  *See, e.g.*, *Sanofi-Aventis U.S., LLC v. U.S. Dep't of Health and Human Servs.*, 570 F. Supp. 3d 129, 172 (D.N.J. 2021); *Cohen v. BH Media Grp.*, 419 F. Supp. 3d 831, 861 n.9 (D.N.J. 2019).

[18] Because this Court has already identified multiple independent grounds that justify dismissal of the FAC, it need not address the remainder of TD Bank's arguments.